IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 20, 2014

## SCOTT CLEVENGER v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Grainger County**
**Nos. 8415, 4190      O. Duane Slone, Judge**

_____

**No. E2013-01786-CCA-R3-PC - Filed July 29, 2014**

_____

In this appeal, the Petitioner, Scott Clevenger, contends that he received ineffective assistance of counsel at trial. Specifically, he alleges that trial counsel failed to meet with him an adequate amount of times and failed to give him a copy of the discovery materials so that he could make an informed decision about his case. After considering the record and the applicable authorities, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL, J., and JEFFREY S. BIVINS, Sp.J., joined.

Pepper Bowser, Rutledge, Tennessee, for the appellant, Scott Clevenger.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; James B. Dunn, District Attorney General; and Tonya D. Thornton, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
FACTUAL BACKGROUND

The Petitioner was indicted by a Grainger County grand jury on August 15, 2006, for the following offenses: one count of aggravated sexual battery, a Class B felony; one count of rape of a child, a Class A felony; and two counts of incest, a Class C felony. He was convicted as charged and subsequently sentenced to consecutive sentences of nine years, for aggravated sexual battery; twenty-five years, for rape of a child; six years, for one count of incest; and ten years, for the second count of incest, resulting in an effective fifty-year sentence. The Petitioner appealed to this court, raising the single issue of "whether the statements by the [Petitioner] should be suppressed because the [Petitioner] did not

knowingly waive his rights under <u>Miranda</u>[<u>v. Arizona</u>, 384 U.S. 436 (1966),] prior to interrogation." Concluding that the issue was waived for failure to file a motion for a new trial and that plain error relief was not warranted, this court denied the Petitioner the relief requested. <u>State v. Scott G. Clevenger</u>, No. E2007-00298-CCA-R3-CD, 2008 WL 588862, at *1-*4 (Tenn. Crim. App. Mar. 5, 2008). The Petitioner was subsequently granted a delayed appeal in which he raised the same issue alleged in the first appeal. <u>State v. Scott Clevenger</u>, No. E2010-00077-CCA-R3-CD, 2011 WL 1660580, at *1 (Tenn. Crim. App. May 2, 2011) (concluding that, pursuant to the law of the case doctrine, the court was "unable to revisit the issue" because it had been "previously determined in this Court's [2008] review under the plain error doctrine").

The factual background presented in support of the Petitioner's convictions was as follows:

> The victim, K.G., is the stepdaughter of the [Petitioner], and the victim, S.C., is the [Petitioner]'s daughter.[1] On February 25, 2006, seventeen-year-old K.G. confided in her sister S.C., who was fifteen, that the [Petitioner] had reinitiated sexual contact with her after believing that the ongoing molestation had ended. The following day, the victims reported the incident to the Grainger County Sheriff's Department and informed officers that the [Petitioner] had been sexually abusing both of them over a period of years. After the two victims were interviewed by Department of Children's Services ("DCS") investigators, the [Petitioner] was interviewed by Officer Maness of the sheriff's department. Maness orally advised the [Petitioner] of his rights, including the right to remain silent and the right to an attorney, before questioning the [Petitioner]. Although the [Petitioner] initially denied any wrongdoing, he eventually gave four written statements during the course of the interview, admitting sexual penetration and contact with both victims. According to Maness, the [Petitioner] was, prior to the giving of each of the four statements, read his rights. Each statement was signed by the [Petitioner] and included a separate signed acknowledgment, also signed by the [Petitioner], waiving his Fifth Amendment rights. The four signed statements by the [Petitioner], with accompanying signed waiver of rights forms, were introduced as exhibits at the hearing.

> Following his indictment on August 15, 2006, by a Grainger County grand jury for one count of aggravated sexual battery involving the victim

---

[1] In order to protect the identity of minor victims of sexual abuse, it is the policy of this court not to refer to them by name. <u>State v. Schimpf</u>, 782 S.W.2d 186, 188 n.1 (Tenn. Crim. App. 1989).

K.G., one count of rape of a child involving the victim S.C., and two counts of incest, one of K.G. and one of S.C., the [Petitioner] filed a motion to suppress his statements to Officer Maness.[2] A hearing on the motion was held on December 6, 2006, immediately prior to commencement of the trial. At the hearing, the [Petitioner] testified that he did not recall being informed of his Miranda rights. He acknowledged that he "signed some papers after the questioning," but he claimed that he did not recall what the papers were. Moreover, he insisted that he signed the papers after he had given his statements to police. However, Officer Maness testified that he informed the [Petitioner] of his rights "each time before he gave [the four] statements." Additionally, he stated that he had specifically asked the [Petitioner] each time if he understood his rights and, further, reminded the [Petitioner] of his rights following each break that was taken during the questioning.

Tape recordings of the interview with the [Petitioner] were admitted into evidence at the hearing as well. No indication of Miranda warnings was audible on the tape, with the only mention of the rights being "at the beginning of one . . . tape, [the Petitioner] was advised that he had been read his rights." When asked why the warning as given did not appear on the tapes, Maness stated that he did not know "whether [the rights portion of the interview] were taped or not." The trial court, after hearing the testimony presented, accredited the testimony of Officer Maness and denied the [Petitioner]'s motion to suppress, finding that the [Petitioner] had knowingly and voluntarily waived his constitutional rights as provided by Miranda.

At trial, S.C. testified that she had been sexually molested and raped by the [Petitioner] and that the incidents had began when she was six years old. The first incident involved her father forcing her and her stepsister, K.G., to "perform oral sex on him, and he was touching us in places like down below. . . ." She also testified regarding a 2002 incident, when she was twelve years old, during which the [Petitioner] took her into his bedroom, "and he penetrated me that night . . . and he performed oral sex [on her] . . . [and] made her" perform oral sex on him. S.C. also testified to a specific incident occurring in 2004, during which the [Petitioner] had her "on the couch and he was trying to do things with [her]. Once again it was oral, and then he tried to stick his penis in [her] vagina and it hurt . . . and he quit."

---

[2] The aggravated sexual battery count alleged the date of 1998; the rape of a child count alleged the date of 2002; the count of incest, involving the victim S.C., alleged the date of 2004; and the count of incest, involving the victim K.G., alleged the date of February 25, 2006.

K.G. also testified at trial that she had been sexually molested and raped by the [Petitioner], stating the abuse began when she was nine years old with an incident involving both her and S.C. during which the [Petitioner] fondled her, touched her, and made her perform oral sex on the [Petitioner]. She stated that the abuse continued until 2006, with the final incident occurring on February 25. According to K.G., she was lying on a futon with her eyes closed. She assumed the [Petitioner] thought her to be asleep. According to K.G., the [Petitioner] was "sticking his fingers in me and everything, and then oral sex again."

At trial, Officer Maness read the [Petitioner]'s four statements into the record. The [Petitioner] testified and denied that any of the incidents had occurred. He testified that he only gave the statements to police after he was questioned for four and a half hours and that he signed the statements because he "was scared mostly . . . and didn't want to see [his] girls hurt or go through any pain or suffering." According to the [Petitioner], he informed the officers that he had problems with his memory due to heavy drug usage, and they gave him "hints" and convinced him that the incidents had occurred.

Clevenger, 2008 WL 588862, at *1-*2.

On October 16, 2008, the Petitioner filed a petition for post-conviction relief, alleging that he received ineffective assistance of counsel at trial and citing multiple factual bases in support of that allegation. As relevant to this appeal, the Petitioner alleged that trial counsel failed to review his discovery materials with him, noting that he did not get the opportunity to review the children's statements or a copy of discovery, and that trial counsel failed to "inform and advise [the P]etitioner of the nature and cause" of the charges against him. A hearing on the petition was held on April 22, 2013; only the testimony of the Petitioner and trial counsel were presented.[3]

The Petitioner testified that he did not feel that trial counsel represented him "to the fullest that [trial counsel] could do." He explained that trial counsel only visited him three times, over the span of approximately one year. The Petitioner further explained that trial counsel may have discussed some discovery material with him but that he never received a physical copy of the discovery nor was he able to review the statements made by the two victims. The Petitioner testified that trial counsel never discussed strategy with him and that,

_____

[3] The Petitioner cited multiple bases supporting his claim of ineffective assistance in his petition and elicited testimony in support of those bases; however, in this opinion, we will only include the testimony and findings relevant to this appeal.

-4-

when he asked questions, trial counsel would say that "he had everything under control." The Petitioner also testified that trial counsel informed him of a plea agreement offered by the State, which he subsequently rejected.

Trial counsel testified that the Petitioner had a preliminary hearing before he was ever indicted, so the evidence against him was clear from the general sessions level. Trial counsel further testified that he met with the Petitioner several times and that their trial strategy was based on a "coerced confession." He also testified that, after the indictment was issued, he requested and received discovery materials and that he and the Petitioner went over those materials in detail. Trial counsel explained that they specifically went over the victims' statements to discern any inconsistencies in their version of events so such could be highlighted during trial. He testified that he was not sure whether he gave the Petitioner a physical copy of the discovery materials. Trial counsel further testified that, during his visits with the Petitioner, they went over the Petitioner's taped confession and, subsequently, filed a motion to suppress that confession on the basis that it was improperly obtained, in keeping with their theory of the case; that motion was ultimately denied.

The post-conviction court accredited trial counsel's testimony, finding that trial counsel met with the Petitioner an adequate amount of times to properly prepare a defense and that trial counsel went over the discovery materials with the Petitioner in detail. In so finding, the post-conviction court concluded that trial counsel met "the acceptable criteria for effective assistance of counsel" and that the Petitioner had failed to prove his allegations in the petition by clear and convincing evidence; the requested relief was denied. This appeal followed.

## ANALYSIS

On appeal, the Petitioner contends that he received ineffective assistance of counsel at trial. Specifically, he alleges that trial counsel failed to meet with him an adequate amount of times and failed to give him a copy of the discovery materials so that he could make an informed decision about his case. The State responds that the post-conviction court properly denied relief because the Petitioner failed to prove any deficiency by trial counsel; he "simply claims that counsel could have done a better job" which is not a sufficient ground for relief.

Petitions for post-conviction relief are governed by the Post-Conviction Procedure Act. Tenn. Code Ann. §§ 40-30-101 to -122. To obtain relief, the petitioner must show that his conviction or sentence is void or voidable because of the abridgement of a constitutional right. Tenn. Code Ann. § 40-30-103. The petitioner must prove his factual allegations supporting the grounds for relief contained in his petition by clear and convincing evidence.

Tenn. Code Ann. § 40-30-110(2)(f); see Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). Evidence is clear and convincing when there is no substantial doubt about the accuracy of the conclusions drawn from the evidence. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

The post-conviction court's findings of fact are conclusive on appeal unless the evidence in the record preponderates against them. See Nichols v. State, 90 S.W.3d 576, 586 (Tenn. 2002) (citing State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999)); see also Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). The petitioner has the burden of establishing that the evidence preponderates against the post-conviction court's findings. Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). This court may not re-weigh or reevaluate the evidence or substitute its inferences for those drawn by the post-conviction court. Nichols, 90 S.W.3d at 586. Furthermore, the credibility of the witnesses and the weight and value to be afforded their testimony are questions to be resolved by the post-conviction court. Bates v. State, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997).

### *Ineffective Assistance of Counsel*

Ineffective assistance of counsel claims are regarded as mixed questions of law and fact. State v. Honeycutt, 54 S.W.3d 762, 766-67 (Tenn. 2001). Thus, the post-conviction court's findings of fact underlying a claim of ineffective assistance of counsel are reviewed under a de novo standard, accompanied with a presumption that the findings are correct unless the preponderance of the evidence is otherwise. Fields, 40 S.W.3d at 458 (citing Tenn. R. App. P. 13(d)). The post-conviction court's conclusions of law are reviewed under a de novo standard with no presumption of correctness. Id.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the defendant to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockart v. Fretwell, 506 U.S. 364, 368-72 (1993). A defendant will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the Strickland test. See Henley, 960 S.W.2d at 580. The performance prong requires a defendant raising a claim of ineffectiveness to show that counsel's representation was deficient, thus fell below an objective standard of reasonableness or was "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. The prejudice prong requires a defendant to demonstrate that "there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability means a probability sufficient to undermine confidence in the outcome." Id. Failure to satisfy either prong results in the denial of relief. Id. at 697, 700. The Strickland standard has also been

applied to the right to counsel under article I, section 9 of the Tennessee Constitution. <u>State v. Melson</u>, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

Both the United States Supreme Court and the Tennessee Supreme Court have recognized that the right to such representation includes the right to "reasonably effective" assistance, that is, within the range of competence demanded of attorneys in criminal cases. <u>Strickland</u>, 466 U.S. at 687; <u>Baxter v. Rose</u>, 523 S.W.2d 930, 936 (Tenn. 1975). In reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." <u>Strickland</u>, 466 U.S. at 689. Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. <u>Hellard v. State</u>, 629 S.W.2d 4, 9 (Tenn. 1982). "Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance." <u>Cooper v. State</u>, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

The post-conviction court accredited trial counsel's testimony and found no deficiency in trial counsel's representation of the Petitioner. Our review of the record supports that finding. Further, the Petitioner, neither in the post-conviction court nor on appeal, has alleged any prejudice as a result of any perceived deficiency in trial counsel's representation; this is fatal to all but the most egregious ineffective assistance of counsel claims. <u>Strickland</u> is a two-prong test; as such, even if this court were to conclude that trial counsel was deficient for failing to adequately meet with and provide discovery materials to the Petitioner, this still would not rise to the level deficiency required for relief without a showing of prejudice. <u>See</u> <u>State v. Cronic</u>, 466 U.S. 648, 659, n.25 (Tenn. 1984). Thus, because the Petitioner has failed to meet the prejudice prong of the <u>Strickland</u> test, he is not entitled to relief on appeal. <u>See</u> <u>Strickland</u>, 466 U.S. at 697, 700.


<u>CONCLUSION</u>

Based upon the foregoing, the judgment of the post-conviction court is affirmed.


_____

D. KELLY THOMAS, JR., JUDGE